**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **MELVINE COWSER PERKINS**, |
| Plaintiff, |
| v. |
| **DISTRICT OF COLUMBIA**, *et al.*, |
| Defendants. |

Case No. 26-cv-430 (CRC)

<u>**MEMORANDUM OPINION**</u>

In the midst of the COVID-19 pandemic, Plaintiff Melvine Cowser Perkins enrolled in the District of Columbia's Rapid Rehousing for Individuals ("RRH-I") program. Among other things, the program offered short-term housing subsidies and case management services to individuals experiencing homelessness. While the program's goals are undoubtedly noble, Perkins alleges that she was denied the support and resources required by law and "improperly exited" from the program. About five years later, she filed this *pro se* lawsuit against Defendants District of Columbia and the D.C. Department of Human Services ("DHS," and collectively, "the District") in the Superior Court of the District of Columbia, alleging numerous constitutional, statutory, and common law claims. After removing the case to this Court, the District now moves to dismiss the complaint, asserting that Perkins's claims are barred by their respective statutes of limitations and fail on the merits. Perkins, now represented by counsel, abandons most of her causes of action but maintains that she adequately alleged a procedural due process violation and a negligence claim. The Court concludes that the former claim is both untimely and deficient on the merits, and it will decline to exercise supplemental jurisdiction over the latter.

## I.    Background

The Court draws the following background facts from Perkins's *pro se* complaint and takes them as true for purposes of the District's motion to dismiss.  See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).

Perkins enrolled in the RRH-I program in September 2020 so that she could "obtain[] safe, stable, and permanent housing."  Compl. at 3.  When she joined the program, she was assigned a case manager.  Id. at 4.  According to Perkins, the case manager was required to (1) "[c]onduct regular case management sessions"; (2) "[a]ssist with [her] housing search and housing navigation"; (3) "[s]upport sustainable employment"; (4) "[p]rovide reasonable accommodations"; (5) "[d]evelop and deliver a written exit plan before program exit"; and (6) "[e]nsure that [she] exit[ed] to permanent stable housing."  Id. at 3–4.  Notwithstanding these obligations, Perkins contends that DHS "failed to conduct adequate or meaningful case management."  Id. at 4.

Perkins informed her case manager that she only had temporary employment related to a COVID-19 emergency executive order.  See id.  Perkins disclosed this information "because her housing stability was dependent on her income, and she anticipated that the temporary employment would end."  Id.  While she "repeatedly expressed concerns regarding her employment instability and the impact on her housing," Perkins alleges that her case manager failed to adjust her case plan, offer accommodations, or "[e]xplore[] alternative income stabilization measures."  Id. at 4–5.[1]

---

[1] Perkins also alleges that she "experienced significant emotional distress due to the fear of homelessness and the loss of financial security."  Compl. at 7.  She sought "psychological mental-health therapy" to manage her stress, but DHS purportedly failed to refer her to treatment or offer any accommodations.  Id.

Perkins was eventually "exited" from the RRH-I program in December 2021.[2]  Before leaving the program, Perkins alleges that she did not receive an exit plan "despite RRH-I mandates requiring such a plan."  Id. at 5.  As a result, she lacked "[s]upport to secure new housing" or "[g]uidance on income stabilization."  Id.  She further alleges that DHS violated its mandate to exit program participants "into safe, stable, and permanent housing," which left her "vulnerable to immediate housing instability."  Id. at 5–6.

At some point after leaving the program, Perkins requested a copy of her case management file.  Id. at 6.  DHS allegedly responded by giving her only part of the file and withholding several key documents.  Id.  According to Perkins, this "fraudulent concealment" prevented her from discovering the bases of her legal claims against the District.  Id. at 6, 8.  In October 2025, a D.C. Councilmember contacted DHS on Perkins's behalf, requesting an "[e]mergency file review" and "[b]ridge or emergency funding."  Id. at 7.  The department purportedly "failed to comply" with this request and "offered no meaningful assistance."  Id.

In December 2025, Perkins filed a *pro se* complaint in D.C. Superior Court.  She alleged that the District deprived her of procedural and substantive due process in violation of 42 U.S.C. § 1983, failed to provide her reasonable accommodations under multiple federal statutes, and committed numerous common-law torts.  See id. at 8–15.  She simultaneously moved for a preliminary injunction that would, among other things, require the District to "[p]rovide

---

[2] Perkins's complaint alleges that she was "exited" from the program in December 2020. See Compl. at 5.  In her opposition to the District's motion to dismiss, Perkins clarifies that she left the program in 2021, not 2020.  See Pl.'s Opp'n to Defs.' Mot. to Dismiss & Reply in Supp. of Mot. for Prelim. Inj. at 10 & n.8; see also id., Ex. 1 at 1 (Perkins's "client intake summary" listing her exit date as December 31, 2021).

immediate housing stabilization assistance" and "bridge funding or emergency rent support."

Pl.'s Mot. for Prelim. Inj. at 1.[3]

Because Perkins's complaint raised several federal questions, the District timely removed

the case to this Court. See 28 U.S.C. §§ 1331, 1441(a). It then filed an opposition to Perkins's

motion for a preliminary injunction and cross-moved to dismiss the complaint. See Def.'s Opp'n

to Pl.'s Mot. for Prelim. Inj. & Def.'s Cross-Mot. to Dismiss ("Defs.' Mot.") at 1–2. Perkins—

now represented by counsel—concedes that a majority of the claims in her complaint "are not

viable under existing case law." Pl.'s Opp'n to Defs.' Mot. to Dismiss & Reply in Supp. of Mot.

for Prelim. Inj. ("Opp'n") at 2 & n.4.[4] However, she maintains that her *pro se* complaint

"sufficiently state[s] causes of action for Violation of Procedural Due Process (Count I) and

Negligence (Count VI)." Id. at 2. Perkins has not moved for leave to amend her initial

complaint through her new counsel. Rather, she requests permission to amend if the Court is

inclined to grant the District's motion to dismiss. See id. The motion to dismiss is fully briefed.

## II.   Legal Standards

A party may move to dismiss a complaint on the grounds that it fails "to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion,

the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

---

[3] Perkins's counsel later withdrew her motion for a preliminary injunction, as she was "able to find permanent housing of her own accord." Notice of Withdrawal of Mot. for Prelim. Inj. at 1.

[4] Because Perkins concedes that these claims are not viable, the Court will dismiss them with prejudice. See Grissom v. District of Columbia, 853 F. Supp. 2d 118, 125 (D.D.C. 2012) (dismissing a claim with prejudice because the plaintiff expressly conceded it); Diaby v. Bierman, 795 F. Supp. 2d 108, 115 (D.D.C. 2011) (dismissing a claim with prejudice because the plaintiff conceded that he lacked a "private right to maintain a cause of action").

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is "plausible" if the plaintiff provides "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "In assessing a Rule 12(b)(6) motion, a court may generally consider only 'the facts contained within the four corners of the complaint.'"  Haymon v. District of Columbia, 610 F. Supp. 3d 101, 108 (D.D.C. 2022) (citation omitted).  The Court may also consider "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice."  Trudeau v. FTC, 456 F.3d 178, 183 (D.C. Cir. 2006) (citation omitted); see also Langeman v. Garland, 88 F.4th 289, 291–92 (D.C. Cir. 2023).

Motions to dismiss based on a statute of limitations defense are "generally disfavored," and "courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint."  Doe v. Kipp DC Supporting Corp., 373 F. Supp. 3d 1, 7 (D.D.C. 2019) (quoting Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (per curiam)); see Stewart v. Int'l Union, Sec., Police & Fire Pros. of Am., 271 F. Supp. 3d 276, 280 (D.D.C. 2017) ("Because a statute of limitations is an affirmative defense, the plaintiff need not allege facts establishing the timeliness of her claim." (citations omitted)).  But dismissal may nonetheless be warranted when "the facts that give rise to the defense are clear from the face of the complaint."  Stewart, 271 F. Supp. 3d at 280 (quoting Smith-Haynie v. District of Columbia, 155 F.3d 575, 578 (D.C. Cir. 1998)); see also Brookens v. Acosta, 297 F. Supp. 3d 40, 45 (D.D.C. 2018) ("If no reasonable person could disagree on the date on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds." (citation and internal quotation marks omitted)).  Courts may also dismiss a complaint with prejudice if "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Firestone, 76 F.3d at 1209 (citation omitted).

5

A *pro se* complaint "is to be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers.'"  Ho v. Garland, 106 F.4th 47, 50 (D.C. Cir. 2024) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)).  However, the complaint "must still contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (internal quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).  And because Perkins's opposition to the District's motion to dismiss was filed by her counsel, the Court "will apply the customary pleading standard to that filing."  Fischer v. District of Columbia, No. 24-cv-44 (CRC), 2025 WL 894445, at *4 (D.D.C. Mar. 24, 2025).

## III.  Analysis

The Court's assessment of Perkins's complaint begins and ends with her procedural due process claim under 42 U.S.C. § 1983.  First, the claim is barred by the three-year statute of limitations.  Second, Perkins failed to adequately allege a claim of Monell liability against the District.  Third, because the due process claim must be dismissed, the Court declines to exercise supplemental jurisdiction over the remaining negligence claim, which implicates questions of D.C. common law that are best left for a D.C. court to resolve.

### A.  Statute of Limitations

Perkins alleges that the District violated her procedural due process rights by depriving her of "the mandatory services and procedural protections" offered by the RRH-I program.  Compl. at 8–9.  The District submits that since Perkins exited the program in 2021, her claim is time-barred.  See Defs.' Mot. at 7–8; Defs.' Reply in Supp. of Cross-Mot. to Dismiss ("Reply Br.") at 2–7.

Section 1983 does not provide a limitations period, Earle v. District of Columbia, 707 F.3d 299, 304 (D.C. Cir. 2012), so the applicable statute of limitations "is that which the State

6

provides for personal-injury torts," Wallace v. Kato, 549 U.S. 384, 387 (2007).  When state law provides multiple statutes of limitations for personal-injury claims, courts "should borrow the general or residual statute[.]"  Owens v. Okure, 488 U.S. 235, 249–50 (1989).  The District of Columbia has two statutes of limitations for tort claims: a one-year statute for certain intentional torts, and a three-year residual statute for all other tort actions.  Earle, 707 F.3d at 305 (citing D.C. Code § 12–301(4), (8)).  Accordingly, this circuit applies a three-year statute of limitations to § 1983 claims.  Id.; see also Bundy v. Sessions, 387 F. Supp. 3d 121, 125 (D.D.C. 2019), aff'd, 812 F. App'x 1 (D.C. Cir. 2020).

Unlike the statute-of-limitations period, the date on which a § 1983 action accrues "is a question of federal law that is *not* resolved by reference to state law."  Earle, 707 F.3d at 305 (quoting Wallace, 549 U.S. at 388).  Under federal law, a claim typically accrues when the plaintiff has "a complete and present cause of action."  Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997) (citation omitted) (noting that "a cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief"); see Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys., 603 U.S. 799, 809 (2024) (same).  "To determine when a plaintiff has a complete and present cause of action, the Court focuses first on the specific constitutional right alleged to have been infringed."  Reed v. Goertz, 598 U.S. 230, 235–36 (2023).

Perkins alleges a violation of her procedural due process rights.  See Compl. at 8–9.  A procedural due process claim has two elements: (1) a "deprivation by state action of a protected interest in life, liberty, or property," and (2) "inadequate state process."  Reed, 598 U.S. at 236 (citing Zinermon v. Burch, 494 U.S. 113, 125 (1990)); see also Atherton v. D.C. Off. of Mayor, 567 F.3d 672, 689 (D.C. Cir. 2009) ("A procedural due process violation occurs when an official

deprives an individual of a liberty or property interest without providing appropriate procedural protections."). The violation "is not complete when the deprivation occurs," but rather when "the State fails to provide due process." Reed, 598 U.S. at 236 (quoting Zinermon, 494 U.S. at 126); see Morris v. Carter Glob. Lee, Inc., 997 F. Supp. 2d 27, 36 (D.D.C. 2013) (noting that a procedural due process claim is "complete at the moment of [the plaintiff's] alleged deprivation without due process").

Perkins alleges that DHS deprived her of "mandatory services and procedural protections" under the RRH-I program by "[e]xiting her without a required exit plan," "[f]ailing to provide required case management," "[f]ailing to give notice or [an] opportunity to be heard," "[f]ailing to provide accurate information about services," and "[f]ailing to provide assistance despite [her] known instability." Compl. at 9. In her opposition to the District's motion to dismiss, Perkins clarifies that her alleged "protected property interest" was her right to participate in the RRH-I program "until she was exited or terminated in accordance with" the program's governing statutes and regulations. Opp'n at 13. That is, Perkins asserts that before DHS could deny, reduce, or terminate her program "benefits," it had to provide "a fair hearing, clear notice and hearing rights, and a ninety-day window to appeal to the Office of Administrative Hearings." Id. (citations omitted); see also id. at 14 (noting that Perkins's "abrupt exit lacked adequate notice or usable records to support a fair hearing"), 21 ("The District improperly exited [Perkins] during the COVID-19 pandemic while she was still economically unstable, resulting in . . . a violation [of her] procedural due process rights.").

Assuming for the moment that Perkins adequately alleged a deprivation of a protected due process interest, her claim accrued when DHS exited her from the RRH-I program (i.e., deprived her of a property interest) without a hearing or opportunity to appeal (i.e., without due

8

process).  The parties agree that Perkins exited the program in December 2021, see id. at 10 &

n.8; Reply Br. at 4, so her claim accrued more than three years before she filed her complaint.

The claim is therefore untimely.

Perkins offers two points in response, but neither is persuasive.  First, she argues that her

procedural due process claim did not accrue until she suffered an "injury," which she describes

as the threat of "imminent eviction and homelessness" she faced in 2025.  Opp'n at 8.  The Court

first notes that it is unclear how Perkins's exit from the RRH-I program in 2021 is causally

related to her eviction in 2025.  In any event, a procedural due process claim is complete—and

thus accrues under federal law—when the defendant "fails to provide due process," not when the

Plaintiff suffers an economic injury four years after the alleged deprivation.  Reed, 598 U.S. at

236 (citing Zinermon, 494 U.S. at 126); see Morris, 997 F. Supp. 2d at 36 (concluding that the

plaintiff's procedural due process claim accrued when he was terminated without notice of the

employer's reasoning or an opportunity to respond); cf. Carey v. Piphus, 435 U.S. 247, 266

(1978) (recognizing that a procedural due process claim is actionable for nominal damages even

when there is no "proof of actual injury").

Second, Perkins invokes the "discovery rule," which "allows a statute of limitations to be

tolled until the plaintiff knew, or should have known, of the information that would allow her to

bring suit against the defendant."  Opp'n at 9.  She submits that the rule applies here because she

did not "discover" DHS's obligations until she "investigated" the program in June 2025.  Id. at

10.[5]  To be sure, the discovery rule may delay the accrual of a claim when the alleged injury is

---

[5] Perkins also asserts that the discovery rule applies because she "cannot be held to have known of the inaccuracies in her [RRH-I] case file until she was able to obtain a copy of the file" in 2025.  Opp'n at 10.  But neither her complaint nor her opposition brief alleges that she was deprived of a property interest in an "accurate" case file.  See Compl. at 9 (listing deprivations of Perkins's "protected interests" without mentioning her case file); Opp'n at 13–14 (describing the

"not of the sort that can readily be discovered when it occurs." Page v. Comey, 137 F.4th 806, 815 (D.C. Cir. 2025) (citation omitted); but see id. at 828 (Henderson, J., concurring in part and dissenting in part) (suggesting that the application of the discovery rule in federal question cases "may no longer be good law").  But there is no basis to apply the rule here.  The statutes and regulations governing the RRH-I program are publicly available.  See Opp'n at 13–14 (citing D.C. Code §§ 4–754.11(a)(16), 4–754.41(b), 4–754.42; D.C. Mun. Regs. tit. 29, § 7611.1 (2011)).  Upon her "abrupt exit" from the program, id. at 14, Perkins could have readily discovered these statutes and regulations "in the exercise of due diligence," Sprint Commc'ns Co., L.P. v. FCC, 76 F.3d 1221, 1228 (D.C. Cir. 1996) (noting that "[a]ccrual does not wait until the injured party has access to or constructive knowledge of all the facts required to support its claim").  The fact that Perkins did not "discover" the program rules until 2025 does not delay the accrual of her procedural due process claim.  See id. ("Once the prospective plaintiff is on notice that [she] might have a claim, [she] is required to make a diligent inquiry into the facts and circumstances that would support that claim.").

Because the procedural due process claim alleged in the complaint is "conclusively time-barred" on its face, the Court may dismiss it as untimely.  See Satterlee v. Comm'r of Internal Revenue, 195 F. Supp. 3d 327, 338 (D.D.C. 2016).

---

alleged procedural due process violation as her "improper exit" from the RRH-I program), 16 (noting that Perkins is "asserting a protected property interest based on the statutory and regulatory protections preventing *termination of services* unless explicit statutory criteria are met" (emphasis added)).

B.  Merits of Procedural Due Process Claim

Even if it were timely, Perkins's procedural due process claim would be subject to dismissal because she failed to establish the District's liability under Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978).

In Monell, the Supreme Court recognized that "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." City of Canton v. Harris, 489 U.S. 378, 385 (1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983."). In other words, "a local government may not be sued under § 1983 for an injury inflicted *solely* by its employees or agents." Monell, 436 U.S. at 694 (emphasis added). To determine whether a complaint adequately states a claim for municipal liability, the Court "must conduct a two-step inquiry." Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992)). The Court first "determine[s] whether the complaint states a claim for a predicate constitutional violation." Id. If it does, the Court then "determine[s] whether the complaint states a claim that a custom or policy of the municipality caused the violation." Id. If the Court finds that the complaint does not satisfy the "custom or policy" requirement, then it need not decide whether there was an underlying constitutional violation. See Coleman v. District of Columbia, 828 F. Supp. 2d 87, 90 (D.D.C. 2011).

There are a "number of ways" in which a plaintiff can allege that a municipality "custom or policy" caused the alleged constitutional violation, including

> [1] the explicit setting of a policy by the government that violates the Constitution; [2] the action of a policy maker within the government; [3] the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom"; or [4] the failure of the government to respond to a need (for example, training of employees) in such a manner as to show

11

> "deliberate indifference" to the risk that not addressing the need will result in constitutional violations.

Baker, 326 F.3d at 1306 (citations omitted); accord Hurd v. District of Columbia, 997 F.3d 332, 337 (D.C. Cir. 2021).  "A plaintiff must plead the elements of the relevant type of municipal policy."  Blue v. District of Columbia, 811 F.3d 14, 20 (D.C. Cir. 2015).  The plaintiff must also allege an "'affirmative link,' such that a municipal policy was the 'moving force' behind the constitutional violation."  Baker, 326 F.3d at 1306 (citations omitted).

Even if Perkins's complaint adequately states a procedural due process claim—a question that this Court does not reach—it fails to allege that a District custom or policy caused the constitutional violation.  The complaint asserts that the RRH-I program offered "mandatory services and procedural protections," and DHS "deprived" her of those benefits through its inadequate case management and exiting process.  Compl. at 8–9; see also id. at 9 (claiming that DHS "fail[ed] to follow legally mandated procedures").  Put another way, Perkins does not challenge the procedures themselves, but rather the fact that she was exited from the program in *violation* of those procedures.

These allegations are not sufficient under any theory of municipal liability.  The complaint does not allege an "explicit setting of a policy by the [District]" that violated her procedural due process rights.  Baker, 326 F.3d at 1306 (citing Monell, 436 U.S. at 694–95).  Nor does it allege that a District official with "final authority to establish municipal policy" was involved in her exit from the program.  Pembaur v. City of Cincinnati, 475 U.S. 469, 481–84 (1986).  Nor does it allege "a series of decisions" made by inferior officials that "manifest[] a 'custom or usage' of which the superior must have been aware."  City of St. Louis v. Praprotnik, 485 U.S. 112, 130 (1988) (citation omitted).  Nor does it allege that the District's failure to train or supervise its employees constituted "deliberate indifference" to the risk of a constitutional

violation. Harris, 489 U.S. at 388. In short, the complaint does not allege any facts indicating that Perkins's allegedly-improper exit from the program was anything more than "an action taken unilaterally by a nonpolicymaking municipal employee." Carter v. District of Columbia, 795 F.2d 116, 122 (D.C. Cir. 1986) (citation omitted).

To be sure, Perkins attempts to correct this deficiency in her opposition to the District's motion to dismiss. Her briefing suggests in broad strokes that the District has "allowed mismanagement" of the program and engaged in multiple "violations of due process." Opp'n at 16–17; see also id. at 18 (alleging "numerous instances of mismanagement" in the program that "have been widely acknowledged for a long time").[6] But a plaintiff ordinarily may not allege additional facts to establish municipal liability through subsequent briefing. See West v. District of Columbia, No. 22-cv-3107 (CRC), 2023 WL 5929442, at *4 (D.D.C. Sept. 12, 2023). And even if the Court evaluated Perkins's *pro se* complaint "in light of" briefing filed by her counsel, Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) (citation omitted), the brief's conclusory allegations that the District engaged in "negligent mismanagement" of the program do not establish a custom or policy, Opp'n at 19; see Coleman, 828 F. Supp. 2d at 93 (concluding that "one example" of a due process violation "coupled with a conclusory allegation" did not satisfy Rule 12(b)(6)'s plausibility standard). Because the cursory and tangentially-related allegations in the briefing "would be insufficient to state a policy or practice

---

[6] Perkins's opposition brief cites to (1) a 2025 class-action lawsuit (which was voluntarily dismissed) pertaining to a different rapid rehousing program, see Seward v. District of Columbia, No. 25-cv-86 (JEB) (D.D.C. Jan. 13, 2025); (2) the D.C. Council Chairman's public comments about the program in 2022, see Opp'n at 18 n.11; and (3) a 2022 open letter asserting that the rapid rehousing program's time limit terminations were "arbitrary," id. at 18 & n.12. It is unclear how these extraneous allegations relate to Perkins's claim that DHS exited her without adequate notice or an opportunity to appeal. See id. at 16 (explaining that Perkins is "asserting a protected property interest based on the statutory and regulatory protections preventing termination of services unless explicit statutory criteria are met").

13

in any case," the Court finds that Perkins failed to state a claim of <u>Monell</u> liability against the

District.  <u>West</u>, 2023 WL 5929442, at *4.[7]

C.  <u>Negligence Claim</u>

As noted above, Perkins submits that the only "viable" causes of action in her complaint

are her procedural due process and negligence claims.  <u>See</u> Opp'n at 2 & n.4.  Since the former

claim must be dismissed under Rule 12(b)(6), the Court may "decline to exercise jurisdiction"

over the latter.  <u>See</u> 28 U.S.C. § 1367(c)(3); <u>Araya v. JPMorgan Chase Bank, N.A.</u>, 775 F.3d

409, 417 (D.C. Cir. 2014)  ("[I]n the usual case in which all federal-law claims are dismissed

before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . .

will point toward declining to exercise jurisdiction over the remaining state-law claims." (second

alteration in original) (citation omitted)).  Perkins's negligence claim implicates both D.C. tolling

doctrines and the "duty of care" owed under the RRH-I program, issues best left for D.C. courts

to resolve should Perkins wish to pursue the claim further.  The Court will therefore dismiss the

claim without prejudice.  <u>See</u> <u>Kyle v. Bedlion</u>, 177 F. Supp. 3d 380, 400 (D.D.C. 2016) (noting

that "no unfairness attaches to" dismissing state-law claims without prejudice, as 28 U.S.C.

---

[7] Perkins's opposition brief asks that the Court allow her to "amend her Complaint to address any perceived deficiencies with respect to" her procedural due process claim.  Opp'n at 2; <u>see also</u> <u>id.</u> at 3 n.7 (suggesting that the exhibits attached to her opposition brief "demonstrate the allegations [she] could include in an Amended Complaint").  To be sure, the Court should freely grant leave to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, a "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . . —does not constitute a motion within the contemplation of Rule 15(a)."  <u>Kowal v. MCI Commc'ns Corp.</u>, 16 F.3d 1271, 1280 (D.C. Cir. 1994) (alteration in original) (quoting <u>Confederate Memorial Ass'n, Inc. v. Hines</u>, 995 F.2d 295, 299 (D.C. Cir. 1993)).  Perkins's counsel had ample opportunity to move for leave to amend her *pro se* complaint, or at least explain how an amended complaint would cure the defects in her procedural due process claim.  But because her counsel only offered "a bare request to amend [her] complaint," the Court is in no position to assess the potential futility of any such amendment.  <u>United States ex rel. Williams v. Martin-Baker Aircraft Co.</u>, 389 F.3d 1251, 1259 (D.C. Cir. 2004) (affirming the district court's dismissal with prejudice).

§ 1367(d) "tolls the statute of limitations during the pendency of the federal case and for at least 30 days thereafter" (citation omitted)).

## IV. Conclusion

For the foregoing reasons, the Court will grant [2] Defendants' Cross-Motion to Dismiss. A separate Order shall accompany this memorandum opinion.

_____

CHRISTOPHER R. COOPER
United States District Judge

Date:  May 12, 2026

15